704 So.2d 710 (1998)
LA PESCA GRANDE CHARTERS, INC., etc., et al., Appellants,
v.
Michael H. MORAN, etc., et al., Appellees.
Nos. 96-2713, 96-2933.
District Court of Appeal of Florida, Fifth District.
January 2, 1998.
*711 George S. Pappas, Daytona Beach, for Appellants.
Gary L. Stump, of Whittaker, Stump, Webster & Miller, P.A., Orlando, for Appellee Michael H. Moran; d/b/a Marine Surveying Associates; and James L. Rose, of Rice, Rose & Snell, Daytona Beach, for Appellee Ron Bowling.
GRIFFIN, Chief Judge.
This is a consolidated appeal of orders dismissing a number of counts of a complaint with prejudice for failure to state a cause of action. We have jurisdiction to review the order to the extent that two parties, Michael Moran and Ron Bowling, have been eliminated from the lawsuit.
The action arises from the sale of a fiftyfoot yacht called the "Taurus" for $250,000. The boat was purchased in June 1994 by La Pesca Grande Charters, Inc. ["LPG Charters"], a Texas corporation formed by Marie and Ron Groba ["the Grobas"] to operate the Taurus as a charter boat. The seller of the boat was Wild Dog, Inc. ["Wild Dog"]. Ron Bowling ["Bowling"] is the president of Wild Dog, Inc. Michael H. Moran d/b/a Marine Surveying Associates ["Moran"] was hired by the Grobas, allegedly upon Bowling's recommendation, to conduct an inspection of the Taurus prior to the purchase. Apparently, as the boat was en route to Texas after the sale, it caught fire and was badly damaged.
The suit below was brought by LPG Charters in May 1995. The named defendants in the third amended complaint ["the complaint"] were Wild Dog, Bowling and Moran. The complaint contained a total of six countstwo against each defendant. We find no error in the dismissal of the claims against Moran or the dismissal of the contract claim against Bowling. The question that has detained us is whether the lower court erred in dismissing the fraud claim against Bowling.
Count VI of the third amended complaint was styled as an action for fraud against Bowling. The representations allegedly made by Bowling included the following:
*712 (a) that the engines had been recently rebuilt and had only 400 hours on them; (b) that the boat contained new turbos; (c) that the hull was in sound, seaworthy condition; and (4) that the fire extinguisher system was in sound working order. The complaint alleges that the representations were made by Bowling to induce LPG Charters to purchase the boat and that, as a proximate result of these representations, LPG Charters suffered damages. The damages that were sought in this count were the same damages sought in the count for breach of contract: those sums needed to "repair fire damage" and make "structural, mechanical and other repairs." The trial court dismissed the count based on the following analysis:
Count VI alleges fraud against Bowling, based on allegations that false statements/representations were allegedly made by Bowling to plaintiff LPG Charters regarding the condition of the vessel. Under Florida law, individual officers and agents of a corporation may be personally liable, even if such acts are performed within the scope of their employment or as corporate officers. Littman v. Commercial Bank & Trust Co., 425 So.2d 636 (Fla. 3d DCA 1983); Orlovsky v. Solid Surf, Inc., 405 So.2d 1363 (Fla. 4th DCA 1981). A suit for fraud in inducing the contract and suit for breach of contract are two different causes of action and are not mutually exclusive. Williams, supra. However, the identical damages are claimed in Count VI for the alleged fraud ("LPG Charters has suffered the damages aforesaid") as are sought for the breach of contract. Under these circumstances, the fraud count cannot survive. R.D.M.H., Inc. v. Dempsey, 618 So.2d 794 (Fla. 5th DCA 1993); see Williams, supra.

Appellants contend that this count was improperly dismissed. They assert that the complaint states a claim for fraud in the inducement and it is irrelevant whether the identical damages were sought in their claims for fraud and breach of contract.
The appealed order was entered before the Florida supreme court issued its decision in HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996). HTP emphasizes the distinctions between a suit for fraud in inducing the contract and a suit for breach of contract. The court explained these are two very different causes of action with separate and consistent remedies. 685 So.2d at 1239. The HTP court further explained the reason for retaining a cause of action for fraud in the inducement by quoting a widely cited Michigan case, Huron Tool and Engineering Co. v. Precision Consulting Services, Inc., 209 Mich.App. 365, 532 N.W.2d 541, 545 (1995):
The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.
Id. at 1240. If a fraud is perpetrated which induces someone to enter into a contract, there is a cause of action for fraud and the remedies attendant to that particular tort are available. If there is no fraud inducing someone to enter into a contract, but the contract is breached, the cause of action sounds in contract and contract remedies are available. The fact that the measure of damages may be the same for both causes of action does not make the fraud claim disappear. It is no more desirable to have tort law drown in a sea of contract than to have contract law drown in a sea of tort. The notion that a knowing fraud perpetrated to induce someone to enter into a contract can be extinguished by the simple expedience of including the fraudulent representation in the contract makes no sense.[1] The problem appears to be that there is a lot of loose language being used to describe these principles and the confusion is compounded with almost every case.
*713 What the above-quoted language from Huron Tool means is no mystery and is already explained in existing Florida law. John Brown Automation, Inc. v. Nobles, 537 So.2d 614 (Fla. 2d DCA 1988), review denied, 547 So.2d 1210 (Fla.1989). To understand it merely requires an appreciation of the distinction between fraud in the inducement and fraud in the performance of a contract. The New Jersey case referenced in the Huron Tool opinion is plainly a fraud in the performance case. Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co., 722 F.Supp. 184, 201 (D.N.J.1989).
A few examples may be helpful. Suppose someone offers to sell you a particular emerald for $5,000 and, in order to induce you to buy it, represents to you that it is "top quality" and that it has not been filled. You buy it based on the factual representation that the stone is unfilled but later you learn that it, in fact, had been filled. If the seller knew the emerald had been filled but lied in order to trick you into agreeing to buy it, you have a cause of action for fraud with all its attendant remedies. You may also have an action for breach of contract. The fact that the same measure of damages (the difference in value between a filled emerald and an unfilled emerald) may be available under both the tort and the breach of contract does not cause the tort to disappear. Nor does the inclusion of the fraudulent representation as an express warranty in the contract preclude the tort remedy.
Suppose, on the other hand, on December 1, 1997, the same person enters into a contract with you pursuant to which, in exchange for your payment of $5,000, he will deliver to you on January 1, 1998 a "top quality," unfilled emerald. If, on January 1, 1998, he instead delivers an emerald that has been filled, he has only breached the contract. It is immaterial whether, when he delivered the emerald on January 1, 1998, he knew the emerald was filled. This is breach of contract pure and simple and cannot be converted into a fraud. Nor is it a fraud if the emerald is not "top quality" because such a representation concerning the quality of the product is essentially opinion, not fact, and the characteristics of the product are a matter that the parties can expect to control by contract.[2]HTP at 1240. The essential difference lies in the nature of fraud itself, which is a knowing false statement of fact made with the intent that it cause action in reliance and it does cause such action to the detriment of the victim of the knowing false statement. In a fraud in the inducement situation, if there is damage based on a decision to contract that would otherwise not be made, a cause of action for fraud exists. There isn't necessarily damage where there is fraud, which is why no cause of action for fraud exists unless there is damage due to fraud that is separate from damages that may result from any subsequent contractual breach. This principle has nothing to do with the economic loss rule. The economic loss rule does not preclude a tort claim which is based on conduct which is separate and distinct from conduct constituting a breach of contract, if the fraud itself causes damage. See PK Ventures, Inc. v. Raymond James & Assocs., Inc., 690 So.2d 1296 (Fla.1997); Woodson v. Martin, 685 So.2d 1240 (Fla. 1996).
The cases that speak of there being no claim for fraud where the measure of recovery is the same as that sought for breach of contract are either fraud in the performance cases or cases where the court failed to appreciate the distinction. The case relied upon by the lower court, R.D.M.H., Inc. v. Dempsey, 618 So.2d 794 (Fla. 5th DCA 1993), contains no facts but the case on which it relies for the stated rule is clearly a "fraud in the performance" case. Rolls v. Bliss & Nyitray, Inc., 408 So.2d 229, 237 (Fla. 3d DCA 1981). In Rolls, the alleged fraud was the defendants' false statements about why they were not paying the plaintiffs the monies they were owed under a contract. Perhaps courts once explained the fraud/contract *714 issue as they did because, at that time, Florida allowed actions for breach of contract to be brought either in contract or tort and recognized tort remedies for intentional breach. See. id. This has long since been corrected. See AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So.2d 180 (Fla.1987). A recent opinion from the Middle District of Florida does a good job in explaining the evolution of Florida law on this issue, recognizing that the key is to determine the independence of the fraud claim, not to analyze damages. Dantzler Lumber & Export Co. v. Bullington Lumber Co., 968 F.Supp. 1543 (M.D.Fla.1997).
In the context of the present case, there are allegations of two knowingly false statements of fact made to induce the appellants to buy the boat: that the engines had recently been rebuilt and had less than 400 hours and that the turbos were new. To this extent, the lower court erred in dismissing the fraud claim against Bowling for failure to state a cause of action.
AFFIRMED in part; REVERSED in part; and REMANDED.
PETERSON and THOMPSON, JJ., concur.
NOTES
[1] The victim of a fraud can agree by contract, however, to forego reliance on any prior false representation and limit his reliance to the representations that are expressly contained in the contract. This case does not involve such an agreement.
[2] Nevertheless, where the representations concerning a particular characteristic is truly factual and where the representation of fact induces the agreement rather than merely constituting an aspect of performance of the agreement, as in the examples above, fraud is possible. See Brufsky v. Parker Marine Enterprises, Inc., No. 96301-CIV-FTM-17D, 1997 WL 158309 (M.D.Fla. Mar.27, 1997).